IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARY BELL, Plaintiff, and | § | |
| SAMUEL BELL, Intervenor, | § | |
| | § | |
| v. | § | |
| | § | |
| HARRIS COUNTY and ADRIAN | § | CIVIL ACTION NO. H-10-2421 |
| GARCIA, in His Official | § | |
| Capacity as Sheriff of | § | |
| Harris County, Texas, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Mary Bell, Independent Administratrix of the Estate of Tyrone Bell (Bell) and Bell's surviving mother, brings this action against defendants, Harris County and Adrian Garcia in his official capacity as Sheriff of Harris County, Texas, under 42 U.S.C. §§ 1983 and 1988 for violation of the United States Constitution, and for a variety of state law claims, including wrongful death and the intentional infliction of emotional distress arising from Bell's death on July 12, 2008, while incarcerated at the Harris County Jail.[1] Bell's surviving father, Samuel Bell, has intervened and alleged claims that are essentially identical to those alleged by plaintiff.[2] Pending before the court are the following motions filed by Defendant Harris County:  Motion to

_____

[1]Plaintiff's Original Complaint, Docket Entry No. 1.

[2]Intervenor's Original Complaint, Docket Entry No. 5.

Amend Docket Control Order (Docket Entry No. 15), Motion to Compel Discovery Responses and Re-Urging of Motion to Amend Docket Control Order (Docket Entry No. 16), Motion for Summary Judgment (Docket Entry No. 18), and Motion in Limine and Motion to Exclude Undisclosed Evidence (Docket Entry No. 23). For the reasons explained below, Harris County's motion for summary judgment will be granted as to the federal law claims asserted in this action, the court will decline to exercise supplemental jurisdiction over the pendent state law claims, and Harris County's remaining motions will be declared moot.

## I.  **Undisputed Facts**

On July 3, 2008, Bell was arrested for possession of a controlled substance, and incarcerated in the Harris County Jail.

On July 4, 2008, Bell was initially screened during the early morning hours by a nurse who noted that he had a history of hypertension and dialysis for which he required prescription medication.[3] During the day Bell was evaluated by a physician who noted that he suffered from "End State Renal Disease (ESRD), last dialysis yesterday, on same meds from March '08. No problems waiting until dialysis Monday. No complaints."[4] The physician prescribed a number of medications, including "Renagel 800 mg with

_____

[3]Affidavit of Michael M. Seale, M.D., Exhibit 3 to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 18, p. 3. See also Progress Notes, Docket Entry No. 19, p. 14.

[4]Id. See also Progress Notes, Docket Entry No. 19, p. 13.

meals," ordered dialysis three times a week, and noted "Labs ordered for Monday 7/7/08."[5]   At 5:00 p.m. and again at 11:45 p.m. a nurse assessed Bell and recorded his vital signs.[6]

On July 5, 2008, a nurse assessed Bell and recorded his vital signs at 12:52 a.m.[7]

On July 6, 2008, a nurse assessed Bell and recorded his vital signs at 11:45 p.m.[8]

On July 7, 2008, Bell received hemodialysis.[9]

On July 8, 2008, a nurse assessed Bell and recorded his vital signs at 12:10 a.m.[10]

On July 9, 2008, a nurse assessed Bell and recorded his vital signs at 12:30 a.m.[11]   Later that day a medical student evaluated Bell, recorded his vital signs, and noted that his blood pressure was elevated and would be rechecked on his next visit.[12]   Still later a physician evaluated Bell who noted:   "37 y/o man with

---

[5]Id.

[6]Progress Notes, Docket Entry No. 19, p. 21.

[7]Id.

[8]Id. at 20.

[9]Id. at 4.

[10]Id.

[11]Id.

[12]Affidavit of Michael M. Seale, M.D., Exhibit 3 to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 18, p. 4.   See also Progress Notes, Docket Entry No. 19, p. 12.

history of HTN admitted for continuation of chronic hemodialysis for ESRD for 3 years.  Chronic right lower leg ulcer.  Discontinue wound care.  Dry dressing to right lower leg daily for 30 days . . ."[13]  Bell received hemodialysis.[14]

On July 10, 2008, a nurse assessed Bell and recorded his vital signs at 12:45 a.m.[15]

On July 11, 2008, a nurse assessed Bell and recorded his vital signs at 1:40 a.m.[16]  At 1:15 p.m. Bell refused hemodialysis due to a headache, nausea, and trouble walking.[17]  A physician evaluated Bell and made the following notes:

> Patient seen and examined.  Patient alert, oriented, in no distress.  No signs/symptoms of volume overload or uermia.  Increased phosphorus is chronic and will be addressed.  Assessment and Plan:  Increased phosphorus: increase Renagel 3200 mg TID before meals for 30 days.  Dietary consult.  Hold Commissary.  Check chemistries 7/18/08.  ESRD: no indication for emergent hemo-dialysis.[18]

At 3:15 p.m. a nurse assessed Bell and recorded his vital signs.[19]  A nutrition note in his record states:

---

[13]Id.

[14]Progress Notes, Docket Entry No. 19, p. 5.

[15]Id. at 20.

[16]Id. at 18.

[17]Id. at 3.

[18]Affidavit of Michael M. Seale, M.D., Exhibit 3 to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 18, p. 5.  See also Progress Notes, Docket Entry No. 19, p. 11.

[19]Progress Notes, Docket Entry No. 19, p. 18.

37 y/o African-American male on hemodialysis with increased phosphorus. Patient is in hallway on stretcher, complains of severe headache, nausea, greenish fluid (small amount) in basin that he states he vomited. Says he refused dialysis today because his head hurts too much. Inappropriate for education today. Briefly discussed increased phosphorus levels-patient attributes to "too much milk and cheese" and not enough Renagel. States he has been previously educated re diet restrictions and guidelines. Advised patient his commissary will be restricted to better manage his health. Encouraged diet compliance. Will meet with patient for education next week when he is feeling better.[20]

On July 12, 2008, a nurse assessed Bell and recorded his vital signs at 12:00 a.m.[21] At about 9:00 a.m. Bell's mother visited him in jail and found Bell too ill to visit. At about 12:20 p.m. Bell's mother expressed concern about Bell's health to a jail nurse.[22] At 12:30 p.m. a nurse assessed Bell and found him verbally abusive and unresponsive to questions.[23] At 2:45 p.m. a nurse again assessed Bell and noted "Patient complains of pain in abdomen. Patient is anxious and has altered mental status. Patient refused dialysis yesterday. Patient is diaphoretic. Chart to MD. Last dialysis was Wednesday."[24] At about 2:50 p.m. Bell was transferred

---

[20]Id. at 10.

[21]Id. at 19.

[22]Affidavit of Mary Bell, Exhibit 2 to Plaintiff Mary Bell's Response to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 21, pp. 1-2 ¶¶ 5-8.

[23]Affidavit of Michael M. Seale, M.D., Exhibit 3 to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 18, p. 5. See also Progress Notes, Docket Entry No. 19, p. 10.

[24]Affidavit of Michael M. Seale, M.D., Exhibit 3 to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 18, p. 5. See also Progress Notes, Docket Entry No. 19, p. 9.

to the clinic, his blood sugar was 54, and he was given orange juice.[25]  A physician evaluated Bell who noted:

> Recheck 151/114.  Per patient and nursing staff, patient refused dialysis yesterday and refused all meds today secondary to headache.  Nursing staff reports altered mental status.  [Brought to] clinic.  CPR note – patient lost consciousness – unable to find pulse and no spontaneous respirations.  CPR started – patient intubated with 7.5 ETT with equal breath sounds.  Unable to gain IV access.  HFD EMS arrived and managed code.  Patient transported to Ben Taub with ACLS in progress by HFD.[26]

A late entry to Bell's medical records states that "HFD took over at 1520."[27]  A nursing note states: "Received call from Sergeant Rankin at 1645.  Dr. Simpson at Ben Taub Hospital pronounced Mr. Tyrone Bell at 1623.  Cause of death: cardiac arrest."[28]

## II.  <u>Standard of Review</u>

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to

---

[25]<u>Id.</u>

[26]<u>Id.</u>

[27]<u>Id.</u> at 6.  <u>See also</u> Progress Notes, Docket Entry No. 19, p. 8.

[28]<u>Id.</u>  <u>See also</u> Progress Notes, Docket Entry No. 19, p. 7.

mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).   If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2110 (2000).

### III.  Federal Law Claims

The claims asserted in this action arise from Bell's death while in the custody of the Harris County Sheriff's Department. The plaintiff and intervenor seek to hold Harris County liable for Bell's death by alleging that Harris County intentionally and with deliberate indifference deprived Bell of rights protected by the United States Constitution, including (1) the right to life, (2) the right to reasonably safe conditions of confinement, (3) the right to receive proper and adequate medical services, and (4) the

-7-

right to be free from cruel and unusual punishment.[29]  Harris County

argues that it is entitled to summary judgment on the federal law

claims asserted in this action because plaintiff is unable to

establish that Bell suffered a constitutional injury or that any

such injury was caused by a policy or custom of Harris County.[30]

Plaintiff responds that

> [t]he evidence presented in both [her] Affidavit and
> Dr. Michael D. [Seale]'s Affidavit is sufficient to
> demonstrate the existence of genuine issues of disputed
> material fact regarding the constitutionally inadequate
> medical care provided in the Harris County Jail.  Thus it
> is Plaintiff's contention that the court is precluded
> from entering summary judgment for Harris County.[31]

## A.   Applicable Law

### 1.   Named Defendants

The defendants named in this action are Harris County and

Adrian Garcia in his official capacity as Harris County Sheriff.

Plaintiff and intervenor allege that these defendants violated

Bell's constitutional rights as a pretrial detainee not to be

punished, to be reasonably safe, and to receive reasonable,

adequate, and timely medical care.

---

[29]Plaintiff's Original Complaint, Docket Entry No. 1, p. 8
¶ 24; Intervenor's Original Complaint, Docket Entry No. 5, p. 5
¶ 26.

[30]Defendant Harris County's Motion for Summary Judgment, Docket
Entry No. 18, p. 6.

[31]Plaintiff Mary Bell's Response to Defendant Harris County's
Motion for Summary Judgment, Docket Entry No. 21, p. 10.

(a)  Adrian Garcia

Adrian Garcia, the only individual defendant named in this action, is the Sheriff of Harris County, i.e., a government official who may be sued in his official and/or his individual capacity. Hafer v. Melo, 112 S.Ct. 358 (1991); Kentucky v. Graham, 105 S.Ct. 3099 (1985).  "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." Mouille v. City of Live Oak, Texas, 977 F.2d 924, 929 (5th Cir. 1992), cert. denied, 113 S.Ct. 2443 (1993).  "Supervisory officials cannot be held vicariously liable for their subordinates' actions."  Id. (citing Monell v. Department of Social Services of the City of New York, 98 S.Ct. 2018, 2036-2038 (1978)).  "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir.), cert. denied, 104 S.Ct. 248 (1983) (citing Rizzo v. Goode, 96 S.Ct. 598, 604-605 (1976) (affirmative link needed between injury and defendant's conduct)).

The complaints filed in this action state that Garcia is sued "in his official capacity as Sheriff of Harris County."[32]  Neither plaintiff nor intervenor alleges that Garcia was personally involved in the alleged denial of Bell's rights.  A suit against a

---

[32]Plaintiff's Original Complaint, Docket Entry No. 1, p. 1; Intervenor's Original Complaint, Docket Entry No. 5, p. 1.

-9-

government official in his official capacity is the same as a suit against the entity the official represents. Graham, 105 S.Ct. at 3105. The claim that plaintiff has asserted against Garcia in his official capacity is actually a claim against Harris County. Since Harris County is already a named defendant and has received notice and opportunity to respond, claims asserted against Garcia in his official capacity are subject to dismissal because Harris County is the real party in interest. See Bennett v. Pippin, 74 F.3d 578, 584 (5th Cir.), cert. denied, 117 S.Ct. 68 (1996) ("A suit against the Sheriff in his official capacity is a suit against the County.").

(b)  Harris County, Texas

Counties are not liable for the constitutional torts of their employees unless the employees were acting pursuant to an official policy. Monell, 98 S.Ct. at 2036-38 (local government liability cannot be sustained under a theory of respondeat superior). See also Board of County Commissioners of Bryan County, Oklahoma v. Brown, 117 S.Ct. 1382, 1388 (1997). For liability to attach, "the municipality must cause the constitutional tort, which occurs 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Bolton v. City of Dallas, Texas, 541 F.3d 545, 548 (5th Cir.), cert. denied, 129 S.Ct. 1669 (2008) (quoting Monell, 98 S.Ct. at 2037-38). "To hold

a [county] liable under § 1983 for misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the [county's] policymaker was the moving force behind, or actual cause of, the constitutional injury." James v. Harris County, 577 F.3d 612, 617 (5th Cir. 2009), cert. denied, 130 S.Ct. 1078 (2010).  The plaintiff must establish a "direct causal link" between the county policy and the constitutional deprivation.   Id.   Therefore, to defeat Harris County's motion for summary judgment, plaintiff must present facts capable of showing the existence of (1) an official policy or custom (2) of the county's policymaker (3) that caused (4) the deprivation of a constitutionally protected right.  See Brown, 117 S.Ct. at 1388-89.

> An "official policy" is either a policy statement, ordinance, regulation, etc., that has been officially adopted by a policymaker, or a persistent, widespread practice of officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the [county's] policy.

Cox v. City of Dallas, Texas, 430 F.3d 734, 748 (5th Cir. 2005), cert. denied, 126 S.Ct. 2039 (2006).  "The policymaker must have either actual or constructive knowledge of the alleged policy." Id. at 748-49.  See also Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).

2.   Section 1983 Claims

Section 1983 is not a source of substantive rights but is, instead, "a method for vindicating federal rights elsewhere

conferred."   Graham v. Connor, 109 S.Ct. 1865, 1870 (1989)
(quoting Baker v. McCollan, 99 S.Ct. 2689, 2694 & n.3 (1979)).   To
establish a claim under § 1983 a plaintiff must show (1) the
deprivation of a right secured by the United States Constitution
and the laws of the United States and (2) that the deprivation was
committed by a person or persons acting under color of state law.
See West v. Atkins, 108 S.Ct. 2250, 2254-55 (1988) (citing Parratt
v. Taylor, 101 S.Ct. 1908, 1913 (1981) (overruled in part on other
grounds, Daniels v. Williams, 106 S.Ct. 662 (1986)).   See also
Cornish v. Correctional Services Corp., 402 F.3d 545, 549 (5th Cir.
2005).   "'The first inquiry in any § 1983 suit' is 'to isolate the
precise constitutional violation with which [the defendant] is
charged.'"   Graham, 109 S.Ct. at 1870 (quoting Baker, 99 S.Ct. at
2692).

     Plaintiff alleges that Harris County deprived Bell of rights
guaranteed by the United States Constitution.   Bell was a pretrial
detainee in the Harris County Jail during the incidents that form
the basis of this action.   Pretrial detainees held in county jails
are protected under the Due Process Clause of the Fourteenth
Amendment, which prohibits a detainee from being "punished prior to
an adjudication of guilt in accordance with due process of law."
Bell v. Wolfish, 99 S.Ct. 1861, 1872 (1979).   The Fourteenth
Amendment requires county officials to provide for the "basic human
needs" of pretrial detainees, including the right to be reasonably
safe and the right to receive adequate medical care.   See Hare v.

-12-

City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996) (en banc)
(quoting DeShaney v. Winnebago County Department of Social
Services, 109 S.Ct. 998, 1005-06 (1989)).

"Constitutional challenges by pretrial detainees may be
brought under two alternative theories:  as an attack on the
'condition of confinement' or as an attack on an 'episodic act or
omission.'" Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir.
2009) (citing Hare, 74 F.3d at 644-45). A condition-of-confinement
case is a constitutional attack on "general conditions, practices,
rules, or restrictions of pretrial confinement." Hare, 74 F.3d at
644.  See Scott v. Moore, 114 F.3d 51, 53 n.2 (5th Cir. 1997)
(en banc) (listing cases deemed to state challenges to conditions
of confinement).  In a condition-of-confinement case a plaintiff
must establish that the condition amounted to punishment and was
not incident to some other legitimate governmental purpose. Id.
(citing Bell, 99 S.Ct. at 1874 and Hare, 74 F.3d at 640).  A
plaintiff challenging jail conditions must "demonstrate a pervasive
pattern of serious deficiencies in providing for his basic human
needs; any lesser showing cannot prove punishment in violation of
the detainee's Due Process rights." Shepherd, 591 F.3d at 454.
Because a condition of confinement is usually a manifestation of an
explicit policy or restriction, e.g., overcrowding, plaintiffs in
such cases are relieved from the burden of demonstrating a
governmental entity's or individual jail official's actual intent
to punish because intent may be inferred from the decision to
expose a detainee to an unconstitutional condition. Id.

Alternatively, if the alleged harm stems from a particular act or omission by an official, the action is properly characterized as an "episodic act or omission" case.  In such a case

> an actor usually is interposed between the detainee and the [county], such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the [county] that permitted or caused the act or omission.

Scott, 114 F.3d at 53.  Because the focus of the claim is on an individual's misconduct, the detainee is required to prove intent -- specifically, i.e., that one or more jail officials "acted or failed to act with deliberate indifference to the detainee's needs."  Hare, 74 F.3d at 648.  "Deliberate indifference is an extremely high standard to meet."  Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).  "A prison official acts with deliberate indifference only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it."  Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (citing Farmer v. Brennan, 114 S.Ct. 1970 (1994), and Reeves v. Collins, 27 F.3d 174, 176-177 (5th Cir. 1994)).  See also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir.), cert. denied, 120 S.Ct. 249 (1999).  Mere negligence will not suffice, and deliberate indifference cannot be inferred from a failure to act reasonably.  See Hare, 74 F.3d at 649-50.  Unsuccessful medical treatment and medical malpractice do not constitute deliberate indifference.  See Stewart, 174 F.3d 534 and 537.  Deliberate indifference requires a

-14-

showing that an official refused to treat the detainee, "ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino, 239 F.3d at 756.

**B.  Analysis**

Plaintiff contends that her complaint alleges constitutional violations under both a "conditions of confinement" claim (based on Harris County's policies, customs, and practices), and an "episodic act or omission" claim (based on the acts or omissions of Harris County Jail personnel).  Harris County argues that it is entitled to summary judgment on all of plaintiff's claims because Bell received adequate medical care, and because even if Bell did not receive adequate medical care plaintiff cannot establish that a custom or policy was the moving force behind Bell's death.[33]

1.  Episodic Acts or Omissions Claim

Plaintiff alleges that

[t]he Defendants, acting under color of law, as well as acting pursuant to customs a[n]d policies of Harris County deprived Mr. Bell of rights and privileges secured to him by the Fifth, Eight[h], and Fourteenth Amendments to the United States Constitution . . . by failing to provide proper medical treatment, through indifference to his health needs, and through erroneous procedures, in violation of 42 U.S.C. § 1983, 42 U.S.C. § 1988, and related provisions of federal law . . .[34]

_____

[33]Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 18, p. 7 ¶ 23.

[34]Plaintiff's Original Complaint, Docket Entry No. 1, p. 7 ¶ 23.  See also Intervenor's Original Complaint, Docket Entry No. 5, p. 4 ¶ 25.

Plaintiff alleges that

> Defendants acted with deliberate indifference to the serious medical needs presented by Mr. Bell. . .
>
> Defendants in this case specifically knew of the seri[ous] risk to Mr. Bell's health because he told them of his condition and they chose to ignore his repeated requests for medical attention.  There is no doubt that the injuries suffered by Mr. Bell were severe, as they resulted in his death.[35]

As evidence that Bell suffered from episodic acts and omissions that deprived him of his right to adequate medical care, plaintiff argues that Harris County medical personnel failed to provide Bell prescription medication, a therapeutic diet, and timely emergency assistance on either the day before and/or the day he died.

As evidence that Bell failed to receive needed prescription medication, plaintiff argues that "Bell informed the intake nurse of his medical condition,"[36] including his need for a number of prescription medications, that "Bell had none of his medication when he was  booked in[to jail],"[37] that Bell was "dependent on the Jail medical providers to give him his medication,"[38] but that "there was no indication that detainee Bell received any medication for his elevated blood pressure until [] July 11, 2008."[39]  Although

---

[35]Plaintiff's Original Complaint, Docket Entry No. 1, p. 8 ¶¶ 25-26.  <u>See also</u> Intervenor's Original Complaint, Docket Entry No. 5, p. 5 ¶¶ 26-27.

[36]Plaintiff Mary Bell's Response to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 21, p. 13.

[37]<u>Id.</u>

[38]<u>Id.</u>

[39]<u>Id.</u>

plaintiff contends that Bell failed to receive prescription medication, plaintiff acknowledges that "[o]n the same day of detainee Bell's intake screening, Bell was evaluated by a physician and he was prescribed medication, which included 800 mg of Renagel and a Renal diet."[40]  As evidence that Bell failed to receive either the prescribed medication or diet, plaintiff cites the Nutrition Note made in his medical record on July 11, 2008, indicating that Bell attributed his high phosphorus level to too much milk and cheese and not enough of the prescription medicine, Renagel.[41]  But plaintiff fails to present any evidence from which a reasonable jury could conclude either that the amount of milk and cheese or the amount of Renagel Bell received caused or could have caused the conditions that led to his high blood pressure or cardiac arrest.

As evidence that Bell failed to receive timely emergency assistance, plaintiff argues that on July 11, 2008, Bell informed medical staff that he was too ill to tolerate hemodialysis, and that on July 12, 2008, Bell's mother informed medical staff that Bell needed medical assistance because he was weak, disoriented, and having trouble seeing, but Harris County Jail medical personnel ignored both pleas for aid.[42]  Plaintiff's contention that Harris County medical personnel ignored Bell's pleas for aid on

_____

[40]Id. at 14.

[41]Id. (citing Bell's medical record, Docket Entry No. 19, p. 10).

[42]Id. at 15.

-17-

July 11, 2008, is belied by the undisputed evidence that Bell was

evaluated by a physician that day who noted

> Patient seen and examined.  Patient alert, oriented, in
> no distress.  No signs/symptoms of volume overload or
> uremia.  Increased phosphorus is chronic and will be
> addressed.  Assessment and Plan:  increased phosphorus:
> increase Renagel 3200 mg TID before meals for 30 days.
> Dietary consult.  Hold Commissary.  Check chemistries
> 7/18/08.  ESRD:  no indication for emergent hemo-
> dialysis.[43]

Plaintiff's contention that Harris County medical personnel ignored

her own pleas for aid to Bell on July 12, 2008, is belied by the

undisputed evidence that she expressed her concerns to a nurse at

"around 12:20 p.m.,"[44] and that Bell was assessed by a nurse at

12:30 p.m. and again at 2:45 p.m.  Plaintiff explains that she told

the nurse

> that based upon conversation with Tyrone that he is to[o]
> sick to tolerate treatment and that if he is so sick they
> need to find out why he is so sick.  She was very rude
> and stated that he needs the dialysis treatment but that
> he would have to wait now because the people who
> administer the treatments were not going to be back until
> Monday.  She acknowledged that his vision was very
> blurred and that his phosphorus levels were high.  She
> stated that she had not seen him but that she would go
> and check on him.[45]

---

[43]Affidavit of Michael M. Seale, M.D., Exhibit 3 to Defendant
Harris County's Motion for Summary Judgment, Docket Entry No. 18,
p. 5.  <u>See also</u> Progress Notes for Tyrone Bell, Docket Entry
No. 19, p. 11.

[44]Affidavit of Mary Bell, Exhibit 2 to Plaintiff Mary Bell's
Response to Defendant Harris County's Motion for Summary Judgment,
Docket Entry No. 21, p. 2 ¶ 8.

[45]<u>Id.</u>

Undisputed evidence in Dr. Seale's affidavit establishes that Bell was assessed by a nurse at 12:30 p.m. and again at 2:45 p.m.[46] Asserting that "there is no indication in the notes that the nurse [who checked on Bell at 12:30 p.m.] attempted to assess Bell's vital signs or his current medical condition or that any medical treatment was administered at that time,"[47] plaintiff argues that "the medical staff delayed and ignored [Bell's] serious complaints thus denying detainee Bell . . . necessary medical treatment."[48] But plaintiff fails to present any evidence from which a reasonable jury could conclude that Bell's condition warranted treatment. Approximately two hours later at 2:45 p.m. Bell was again assessed by a nurse who noted:

> Patient complains of pain in abdomen.  Patient is anxious and has altered mental status.  Patient refused dialysis yesterday.  Patient is diaphoretic.  Chart to MD.  Last dialysis was Wednesday.  O2 sat 99% on room air.  Blood pressure 187/119.[49]

Bell was subsequently taken to the clinic where he was evaluated by a physician.[50]  The fact that a nurse assessed Bell immediately

---

[46]Affidavit of Michael M. Seale, M.D., Exhibit 3 to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 18, p. 5.  <u>See also</u> Progress Notes for Tyrone Bell, Docket Entry No. 19, p. 11.

[47]Plaintiff Mary Bell's Response to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 21, p. 15.

[48]<u>Id.</u>

[49]Affidavit of Michael M. Seale, M.D., Exhibit 3 to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 18, p. 5.  <u>See also</u> Progress Notes for Tyrone Bell, Docket Entry No. 19, p. 9.

[50]<u>Id.</u> at 5-6.

after plaintiff reported her concerns about Bell's condition, and that a nurse reassessed Bell approximately two hours later indicates that the nursing staff was not deliberately indifferent to Bell's serious medical needs.

The focus of an "episodic act or omission" claim is "one individual's misconduct." Shepherd, 591 F.3d at 452.  Thus, the plaintiff "is required to prove intent-specifically, that one or more jail officials 'acted or failed to act with deliberate indifference to the detainee's needs.'" Id. (quoting Hare, 74 F.3d at 648).  Here, plaintiff has not presented any evidence that one or more jail officials were deliberately indifferent to Bell's serious medical needs.  Indeed, the evidence in the record indicates that Bell was seen and evaluated by Harris County medical personnel each day of his confinement, that following his mother's expression of concern on July 12, 2008, the nursing staff responded immediately by assessing his condition and then again approximately two hours later, following which Bell was transported to the clinic where he was evaluated by a physician.

Plaintiff's allegation that Harris County medical personnel ignored Bell's pleas for aid is belied by the undisputed evidence that Bell was assessed and monitored by nursing staff every day, and was evaluated by a physician not just on the day of his intake screening, but also on July 11, 2008, the day he said that he was too ill to tolerate hemodialysis, and on July 12, 2008, after plaintiff expressed concern about Bell's condition to a nurse.

-20-

Plaintiff's allegation that Harris County medical personnel failed to provide proper medical treatment merely alleges negligence; negligence is not tantamount to intentional wrongdoing by a jail official.   The due process clause is not implicated by a county official's negligent act causing unintended injury to life, liberty, or property.   <u>Daniels</u>, 106 S.Ct. at 663 (section 1983 imposes liability for deprivation of constitutionally protected rights, not violations for tort duties); <u>Stewart</u>, 174 F.3d at 534 (negligent medical treatment does not rise to the level of a constitutional violation).

Because plaintiff has failed to present any evidence from which a reasonable jury could conclude that any individual Harris County official acted or failed to act with deliberate indifference to Bell's serious medical needs, Harris County is entitled to summary judgment on the episodic acts or omissions claims asserted in this action.

2.   <u>Condition-of-Confinement Claims</u>

Plaintiff contends that her complaint and response to Harris County's motion for summary judgment attacks not just the episodic acts and omissions of individual county officials, but also the Harris County Jail's medical care system itself.[51] Plaintiff explains that her "condition of confinement claim is

---

[51]Plaintiff Mary Bell's Response to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 21, pp. 10-13.

based on the Harris County Jail's inadequate and inhumane condition that prevented detainees from receiving consistent and adequate medical care."[52]   As evidence that the conditions of confinement Bell experienced were inadequate and inhumane, plaintiff cites a letter from the United States Department of Justice (USDOJ) to Harris County Judge Ed Emmett dated June 4, 2009, regarding an Investigation of the Harris County Jail conducted pursuant to the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. § 1997.[53]   Asserting that the June 4, 2009, letter was based on two on-site investigations conducted at or near the time that Bell was incarcerated, plaintiff argues that the

> [US]DOJ report states that the Jail fails to provide consistent and adequate care for detainees with serious chronic medical conditions.  *(Ex. 3 pg. 3)*  The USDOJ found deficiencies in the Jail's provision of chronic care and follow-up treatment.   They noted that these deficiencies, in themselves and when combined with the problems in medical record-keeping and quality assurance, are serious enough to place detainees at an unacceptable risk of death or injury.  *(Ex. 3 pg. 3)*

> The report details that detainees who suffer from chronic medical conditions require assessment and ongoing treatment to prevent the progression of their illnesses. *(Ex. 3 pg. 4).*   The USDOJ report that because of crowding, administrative weaknesses, and resource limits, the Jail (HCSO) does not provide constitutionally adequate care to meet the serious medical needs of detainees with chronic illness.  *(Ex. 3 pg. 4).*[54]

---

[52]<u>Id.</u> at 12.

[53]Exhibit 3 attached to Plaintiff Mary Bell's Response to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 21.

[54]Plaintiff Mary Bell's Response to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 21, p. 11.

In response to plaintiff's "conditions of confinement" argument, Harris County argues that the USDOJ letter on which plaintiff relies is inadmissible because it violates the hearsay rule and was not disclosed during discovery.[55]   Harris County asserts that

> [o]ther than citing miscellaneous hearsay in the DOJ investigation Plaintiff (1) fails to provide any admissible evidence to prove that the medical policies of the Harris County Jail were not "reasonably related to a legitimate governmental objective and (2) fails to show that any of the allegations in the DOJ investigation have ultimately been proven to be true.[56]

In addition, Harris County objects to the admissibility of

> the **DOJ investigation "findings" letter** dated June 4, 2009, for the reasons stated in Harris County's separately-filed objections to the admissibility of the DOJ's Notice (a/k/a "findings") Letter, because the DOJ findings letter does not address the specifics of the medical care provided to Tyrone Bell in July 2008, the DOJ letter was not disclosed by either Plaintiff as required by Federal Rule 26(a)(1) and for the reasons more full[y] explained in the separate pleading being filed.[57]

In Defendants' Motion in Limine and Motion to Exclude Undisclosed Evidence (Docket Entry No. 23), Harris County argues that "[t]he [US]DOJ Findings Letter has no relevance whatsoever to this case because it does not address the medical condition of Tyrone Bell or the medical care provided to Bell during his incarceration in July

---

[55]Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 22, pp. 4-5.

[56]<u>Id.</u> at 5.

[57]<u>Id.</u> at 3.

2008,"[58] but acknowledges that "[t]he DOJ conducted on-site visits to the Harris County Jail from July 8-12, 2008," _i.e._, during the time of Bell's incarceration.[59]

Neither party's discussion of the USDOJ letter addresses either the factors that go into analyzing whether the letter is admissible under Fed. R. Evid. 803(8)(C), or other cases that have dealt with the admissibility of this type of letter.  _See_, _e.g._, _Shepherd_, 591 F.3d at 456-57; _Bonilla v. Jaroczyk_, 354 Fed.Appx. 579, 582-83 (2d Cir. 2009), _cert. denied_, 130 S.Ct. 2407 (2010); _Roland v. Johnson_, 933 F.3d 1009, 1991 WL 84346, *2 (6th Cir. 1991) (per curiam) (Table, text available in Westlaw); _Wilks v. Stowers_, 2010 WL 2104153, *9 (W.D. Wash. 2010); _Johnson v. Baker_, 2009 WL 3486000, *2-*3 (W.D. Ky. 2009).  Harris County's contention that the DOJ letter is inadmissible hearsay conflicts with Rule 803(8)(C), which provides that "in civil actions . . . factual findings resulting from an investigation made pursuant to authority granted by law" are not excluded by the hearsay rule "unless the sources of information or other circumstances indicate lack of trustworthiness."  Fed. R. Evid. 803(8)(C).  In _Shepherd_ the Fifth Circuit stated that "Rule 803(8)(C) contemplates the admission of reports, such as this, containing 'factual findings resulting from an investigation made pursuant to authority granted by law.'"  In

---

[58]Docket Entry No. 23, p. 4.

[59]_Id._ at 3.

other cases where this issue has arisen, courts have recognized that such letters are not excluded by the hearsay rule.  See Bonilla, 354 Fed.Appx. at 582; Roland, 1991 WL 84346 at *2; Johnson, 2009 WL 3486000 at *2-*3; Wilks, 2010 WL 2104153 at *9 ("Defendants erroneously argue the Department of Justice report is hearsay.").  Because Harris County has not argued that the USDOJ's sources of information or any other circumstances indicate a lack of trustworthiness, the court is not persuaded that the DOJ letter is inadmissible hearsay.

>           (a)  Fact Issues Exist as to Adequacy of Medical Care

Harris County argues that it is entitled to summary judgment because undisputed evidence establishes that Bell received adequate medical care while he was incarcerated in the Harris County Jail. In support of this argument Harris County cites the affidavit of Michael Seale, M.D., Executive Director of the Harris County Sheriff's Office's Health Services Division, who states that

> 11.  The medical records show that Bell was seen and evaluated by medical personnel every day from July 4, 2008 until his death on July 12, 2008.  Of particular note is the fact that on July 11, 2008, Inmate Bell refused hemodialysis and on July 12, 2008, he refused to answer questions of medical personnel and refused to take his medications.

> 12.  In my opinion, based on the documentation in the medical record, Bell was evaluated on multiple occasions by various physicians and nurses at the Harris County Jail and based on those individual evaluations, appropriate tests were performed and appropriate medications were prescribed.

13.  In my opinion, based on the documentation in the
     medical record, there is nothing in the medical
     records to indicate that Bell failed to receive any
     necessary medical care in the Jail for any medical
     condition of which he complained to the medical
     personnel.

        . . .

15.  In my opinion, based on the documentation in the
     medical record, the health care providers at the
     Harris County Sheriff's Office were not
     deliberately indifferent to Bell's medical
     problems.

16.  In my opinion, based on my training and experience,
     inmate Bell received appropriate and adequate
     medical care at all times in the Jail.[60]

Harris County argues that Dr. Seale's affidavit establishes that

"[t]he evidence indicates that Bell received extensive medical cure

during the relevant jail confinement in July 2008."[61]  Harris County

explains that

    Bell came into the jail with several pre-existing medical
    problems including a diagnosis of end stage renal disease
    and hypertension which conditions were identified during
    medical screening when he came to the jail in July 2008.
    Most revealing is a review of the medical records
    concerning Bell's actual medical evaluations and care
    provided by nurses and doctors.  The chart review[ed] by
    Dr. Michael Seale shows a first entry in the medical
    records on July 4, 2008, as Bell went through the intake
    process and shows that on that date Bell was noted to
    have a history of dialysis, had hypertension and had been
    prescribed Norvasc, Enalapril and Clonidine.  *See Ex. 3
    at 10 [45]*.  Bell's medical condition was monitored daily
    while he was in the jail and as the records show he
    received hemodialysis on July 7th and July 9th and he

_____

[60]Affidavit of Michael M. Seale, M.D., Exhibit 3 attached to
Defendant Harris County's Motion for Summary Judgment, Docket Entry
No. 18, ¶¶ 11-13, 15-16.

[61]Defendant Harris County's Motion for Summary Judgment, Docket
Entry No. 18, p. 14.

refused dialysis on July 11th.  *See Ex. 3 at 10 [19, 22, 16, 17]*.  Then on July 12th Bell became verbally abusive with medical personnel, refused to answer questions and refused medications.  *Ex. 3 at 10 [40]*.  Bell eventually lost consciousness, CPR was applied and he was transferred to Ben Taub General Hospital.  Bell was pronounced dead at Ben Taub on July 12, 2008.[62]

Plaintiff responds that Harris County officials improperly administered Bell's diet and medications.  In particular, plaintiff argues that Bell required a renal diet and prescription medication that were not provided to him, and that as a result Bell died from cardiac arrest.  Plaintiff cites the affidavit of Dr. Seale as well as her own affidavit as evidence that Bell required but was not provided a renal diet and prescription medications.  Plaintiff states in her affidavit that she went to visit Bell on the morning of July 12, 2008, but that Bell was too ill to visit with her because he was suffering from a severe headache and nausea that he attributed to lack of a renal diet and lack of prescribed medicine.  Plaintiff states that she reported Bell's poor condition to a nurse.

Dr. Seale states in his affidavit entry for July 4, 2008, that the physician who evaluated Bell that day prescribed a number of medications, and a renal diet, but there is no evidence in Dr. Seale's affidavit that Bell actually received either the prescribed medications or the renal diet.[63]  Dr. Seale states in his

---

[62]<u>Id.</u> at 24-25.

[63]Affidavit of Michael M. Seale, M.D., Exhibit 3 attached to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 18, ¶ 10.

affidavit entry for July 7, 2008, that a "medical dietitian stamped
receipt of renal diet ordered by MD on 7/04/08,"[64] but despite
providing page references for the other cites to Bell's medical
records, Dr. Seale provides no page reference for the renal diet
order.  The only such order in the medical record provided to the
court is dated July 11, 2008, the day that Bell was too ill to
tolerate hemodialysis, and that order is stamped as received by the
medical dietitian on July 14, 2008, two days after Bell's death.[65]
This evidence raises fact issues as to whether Bell received
adequate medical care while incarcerated in the Harris County Jail
because it creates fact issues as to whether Bell received the
renal diet and/or prescribed medicine that were ordered on July 4,
2008, to treat his chronic conditions.

>           (b)  No Fact Issues Exist as to Whether a Harris County
>                Policy or Custom Was the Moving Force Behind Any
>                Inadequacy of Medical Care

Harris County argues that it is entitled to summary judgment
because plaintiff is unable to establish the existence of an
official policy or custom that was the moving force behind Bell's
failure to receive adequate medical care.  In support of this
argument Harris County cites Dr. Seale's affidavit, which states:

>      6.   Harris County Sheriff's Office ("HCSO") has
>           extensive written policies and procedures for
>           managing the medical care of inmates in the

---

[64]*Id.*

[65]Therapeutic Diet Order included in Docket Entry No. 19, p. 6
of 24.

Harris County Jail.  The policies and procedures comply with the minimum standards of the Texas Commission on Jail Standards and are subject to regular review of the Commission.  The medical policies and procedures call for and support the provision of medical care to inmates in the Harris County Jail.  Attached is a true and correct copy of the "Medical Services Division Philosophy" which is a part of the HCSO Manual of Policies and Procedures.  The Medical Services Division is in place to provide "efficient, effective, and compassionate medical care" to the inmates in the jail.

7.   The HCSO pursues outside peer review and maintains compliance with health care standards in excess of those deemed constitutionally adequate through the HCSO's ongoing reaccreditation with the National Commission on Correctional Health Care ("NCCHC"). The HCSO's medical policies and procedures have been reviewed by the NCCHC and were found to be fully compliant with NCCHC national standards.  Our maintenance of continuous accreditation demon-strates that our policies and procedures were compliant with national standards during July 2008 when Inmate Bell was incarcerated in the Harris County Jail system.

8.   The HCSO jail system has continuously and voluntarily maintained NCCHC accreditation for the past twenty-five years — since July 19, 1985.  In 2010, NCCHC completed its most recent assessment of the medical and mental health care services provided to prisoners incarcerated in the Harris County Jail system.  The NCCHC performs its on-site assessment of the health care provided to prisoners incarcerated in our jail system every three years, and after completion of its 2010 assessment, determined that the Harris County Jail system meets all requirements for accreditation under the NCCHC's *Standards for Health Services*. After a lengthy review process, the NCCHC deter-mined that the Harris County Jail system complies with all thirty-five of its essential standards and with all thirty-one of its important standards that are applicable to our jail facilities.[66]

---

[66]Affidavit of Michael M. Seale, M.D., Exhibit 3 attached to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 18, ¶¶ 6-8.

Harris County argues that Dr. Seale's affidavit establishes that

> In July 2008, Harris County had in place a
> comprehensive written policy for providing adequate
> medical care to inmates . . . in the Harris County jail.
>
>         . . .
>
> The policies and procedures of HCSO comply with the
> minimum standards of the Texas Commission on Jail
> Standards and are subject to regular review of the
> Commission.
>
>         . . . [T]he HCSO pursues outside peer review and
> maintains compliance with health care standards in excess
> of those deemed constitutionally adequate through ongoing
> reaccreditation with the [NCCHC]. . . The HSCO's
> maintenance of continuous accreditation demonstrates that
> its policies and procedure were compliant with national
> standards during July 2008 when Bell was incarcerated in
> the Harris County Jail system.[67]

Plaintiff has not cited any official written or adopted policy on which she bases her claim that Harris County failed to provide Bell adequate medical care. Instead, plaintiff contends that a widespread pattern or practice amounting to official custom attributable to Harris County served as the moving force behind -- or the cause of -- Harris County's alleged failure to provide Bell adequate medical care. In support of this argument plaintiff cites the USDOJ letter of June 4, 2009, to Harris County Judge Ed Emmett, which she argues evidences Harris County's failure to provide adequate medical care to inmates with chronic medical conditions in July of 2008 when Bell was incarcerated. Although Harris County objects to the USDOJ letter as inadmissible hearsay, for the

---

[67]Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 18, pp. 14-15.

reasons explained in § III.B.2 above, the court is not persuaded that the USDOJ letter is inadmissible hearsay. Nevertheless, the USDOJ letter is insufficient to raise a fact issue as to whether a custom or policy of Harris County was the moving force behind any constitutional injury suffered by Bell.

The USDOJ letter concludes that "the number of inmates deaths related to inadequate medical care . . . is alarming,"[68] and that "the Jail fails to provide detainees with adequate . . . medical care,"[69] but the evidence cited in the USDOJ letter does not show a widespread pattern of incidents that are similar to those on which plaintiff relies in support of her claims, i.e., a failure of Harris County officials to provide Bell a therapeutic diet, prescription medication, and/or timely emergency assistance.

The Firth Circuit has explained that plaintiffs relying on an alleged custom or practice must demonstrate a "pattern of abuses that transcends the error made in a single case." Peterson v. City of Fort Worth, Texas, 588 F.3d 838, 850-51 (5th Cir. 2009), cert. denied, 131 S.Ct. 66 (2010) (quoting Piotrowski v. City of Houston, 237 F.3d 567, 582 (5th Cir.), cert. denied, 122 S.Ct. 53 (2001)). "A pattern requires similarity and specificity: '[p]rior indica-tions cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." Id. at

---

[68]USDOJ Letter to the Honorable Ed Emmett, Exhibit 3 to Plaintiff Mary Bell's Response to Defendant Harris County's Motion for Summary Judgment, Docket Entry No. 21, p. 1.

[69]Id.

851 (quoting Estate of Davis ex rel. McCully v. City of
North Richland Hills, 406 F.3d 375, 383 (5th Cir. 2005)). "A
pattern also requires 'sufficiently numerous prior incidents,' as
opposed to 'isolated instances.'" Id. (quoting McConney v. City of
Houston, 863 F.2d 1180, 1184 (5th Cir. 1989)). "[I]solated
unconstitutional actions by municipal employees will almost never
trigger liability." Piotrowski, 237 F.3d at 578.

     The Fifth Circuit has repeatedly recognized that "isolated
violations are not the persistent, often repeated, constant
violations that constitute custom and policy as required for
municipal section 1983 liability." Gates v. Texas Department of
Protective and Regulatory Services, 537 F.3d 404, 437 (5th Cir.
2008) (quoting Campbell v. City of San Antonio, 43 F.3d 973, 977
(5th Cir. 1995)). The Fifth Circuit has explained that "[a]
pattern is tantamount to official policy when it is 'so common and
well-settled as to constitute a custom that fairly represents
municipal policy.'" Peterson, 588 F.3d at 850 (quoting Piotrowski,
237 F.3d at 579) (quoting Webster v. City of Houston, 735 F.2d 838,
841 (5th Cir. 1984) (en banc)). Other than the single incident
represented by Bell's experience pursuant to which plaintiff has
raised fact issues regarding the adequacy of the medical care
provided to Bell based on Bell's alleged failure to receive a
therapeutic diet, prescription medicine, and/or timely emergency
assistance, plaintiff has failed to present any evidence showing
similar prior incidents. Even if plaintiff's evidence could be
liberally construed to raise a fact issue as to whether a custom of

tolerating denials of medical treatment existed at the Harris County Sheriff's Department in July of 2008, plaintiff has failed to allege that Garcia or any other policymaker had actual or constructive knowledge that such a custom existed at the Harris County Jail where Bell was being held, or that Garcia or any other county official condoned or failed to correct such a practice as a matter of deliberate indifference.

Because plaintiff has failed to identify any county official who denied Bell medical care, has failed to allege facts capable of establishing that any county official wantonly disregarded a substantial risk of serious harm to Bell, and has failed to allege facts capable of establishing that an official custom or policy of Harris County was the moving force behind the alleged denial of reasonable medical care to Bell, the court concludes that plaintiff has failed to raise a genuine issue of material fact for trial as to her conditions-of-confinement claim against Harris County for the denial of medical care to Bell.

## IV.  <u>State Law Claims</u>

Plaintiff and intervenor filed their complaints in this court pursuant to the statute governing federal question jurisdiction, 28 U.S.C. § 1331.[70] Federal courts are courts of limited jurisdiction and adjudicate claims arising from violations of federal law, including the United States Constitution, claims in which diversity

---

[70]Plaintiff's Original Complaint, Docket Entry No. 1, p. 3 ¶ 6. <u>See also</u> Intervenor's Original Complaint, Docket Entry No. 5, p. 2 ¶ 6.

of the parties is present, and pendent state law claims over which the court may exercise supplemental jurisdiction. See 28 U.S.C. § 1367(a) ("Except as otherwise provided . . . the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Since the court has concluded that the plaintiff's only federal claims are subject to dismissal, no federal question remains before the court.

Although this fact alone does not divest the court of jurisdiction, the court must decide whether to exercise supplemental jurisdiction over the remaining, pendent state law claims. See 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction"). In Carnegie-Mellon Univ. v. Cohill, 108 S.Ct. 614, 619 n.7 (1988), the Supreme Court recognized that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." See also United Mine Workers v. Gibbs, 86 S.Ct. 1130, 1139 (1966) (ordinarily, when the federal claims are dismissed before trial the pendent state claims should be dismissed as well). Moreover, the

-34-

general rule in the Fifth Circuit is to dismiss state law claims when the federal claims they supplement are dismissed.   See Parker & Parsley Petroleum Co. v. Dresser Industries, 972 F.2d 580, 585 (5th Cir. 1992) (citing Wong v. Stripling, 881 F.2d 200, 204 (5th Cir. 1989)).   See also Enochs v. Lampasas County, __ F.3d __; 2011 WL 184377, *4-*5 (5th Cir. May 17, 2011).   The dismissal of the pendent state law claims should expressly be without prejudice so that the plaintiff may refile those claims in the appropriate state court.   See Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999).   See also 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

In Parker & Parsley, 972 F.2d at 582, the Fifth Circuit held that a district court abused its discretion in failing to relinquish jurisdiction over pendent state law claims.   In that case, which like this case was originally filed in federal court, the sole federal claim was dismissed after nine months of trial preparation and one month before the scheduled trial date.   The district court retained jurisdiction over state law fraud, contract, and tort claims, and continued the case for three additional months.   Prior to the dismissal of the federal claim,

-35-

there had been "a serious attack upon the propriety of venue, rigorous deposition schedules, ungodly amounts of discovery documents, and a hearing on discovery disputes." Id. at 584.   In refusing to surrender jurisdiction over the pendent state law claims, the district court asserted that "the equities weigh heavily in favor of maintenance of the case," and went on to hold a full trial and render judgment on the state law claims.   Id. at 584–85.   After a lengthy and detailed discussion where it "consider[ed] and weigh[ed] all the factors present in th[e] case," the Fifth Circuit reversed the district court, finding that the failure to remand was an abuse of discretion.   Id. at 590.

The Fifth Circuit carefully analyzed the Carnegie-Mellon factors, expressly stating that "[n]o single factor . . . is dispositive." Parker & Parsley, 972 F.2d at 587.   In its consideration, the court noted a number of facts and circumstances weighing in favor of relinquishing jurisdiction:   (i) the case was "only nine months" old; (ii) trial was "still a few weeks away;" (iii) "discovery had not been completed;" (iv) "the case was at an earlier stage than the parties and the court previously might have thought" due to an amended complaint that changed the theories of the case; (v) the district judge did not have "substantial familiarity with the merits of the case;" (vi) the remaining state law issues were "difficult ones;" (vii) remaining in federal court did not "prevent[ ] redundancy [or] conserve[ ] substantial judicial resources;" (viii) there would be no "undue inconvenience" such as a "tremendous financial drain" or a necessity for new legal

research; (ix) the already completed discovery "was largely usable in the state proceeding;" (x) the parties would not be prejudiced by remand; and (xi) the "important interests of federalism and comity" heavily favored remand. Id. at 587–89.

Careful examination shows that the circumstances in this case are similar to those in Parker & Parsley. This case is less than one year old, although discovery was due to have been completed earlier this month (on June 3, 2011), no hearings or trial dates have been scheduled, this court has not yet familiarized itself with any of the state law issues, and no prejudice will be suffered by either party if the state law claims are dismissed without prejudice to refiling in state court. Because the court has concluded that the federal claims asserted in this action are subject to dismissal, and because this action is still at an early stage, the court declines to exercise supplemental jurisdiction over the remaining, pendent state law claims. Accordingly, the court concludes that the state law claims asserted in this action are subject to dismissal without prejudice to refiling in a state court of appropriate jurisdiction.

## V.  Conclusions and Order

For the reasons explained in section **III.** above, the court concludes that the claims that plaintiff has asserted against Sheriff Adrian Garcia in his official capacity are actually claims against Harris County, that plaintiff has failed to raise genuine issues of material fact for trial that would allow a reasonable

-37-

jury to conclude that an official custom or policy of Harris County was the moving force behind the alleged violation of Bell's constitutionally protected rights, and that, consequently, Harris County is entitled to summary judgment on the claims that plaintiff has asserted against Harris County under 42 U.S.C. § 1983.  For the reasons explained in section **IV.** above, the court declines to exercise supplemental jurisdiction over the plaintiff's state law claims.  Accordingly, Defendant Harris County's Motion for Summary Judgment (Docket Entry No. 18) is **GRANTED** as to the federal law claims asserted in Plaintiff's Original Complaint and **DENIED** as to the pendent state law claims over which the court declines to exercise supplemental jurisdiction.  Because the court has granted Harris County's motion for summary judgment on the federal law claims asserted in this action, and declined to exercise supplemental jurisdiction over the remaining state law claims, (1) Defendant Harris County's Motion to Amend Docket Control Order (Docket Entry No. 15) is **MOOT;** (2) Defendant Harris County's Motion to Compel Discovery Responses and Re-Urging of Motion to Amend Docket Control Order (Docket Entry No. 16) is **MOOT;** and (3) Defendant Harris County's Motion in Limine and Motion to Exclude Undisclosed Evidence (Docket Entry No. 23) is **MOOT.**

     **SIGNED** at Houston, Texas, on this the 22nd day of June, 2011.

 

 

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARY BELL, Plaintiff, and | § | |
| SAMUEL BELL, Intervenor, | § | |
| | § | |
| v. | § | |
| | § | |
| HARRIS COUNTY and ADRIAN | § | CIVIL ACTION NO. H-10-2421 |
| GARCIA, in His Official | § | |
| Capacity as Sheriff of | § | |
| Harris County, Texas, | § | |
| | § | |
| Defendants. | § | |

### FINAL JUDGMENT

In accordance with the Memorandum Opinion and Order granting Defendant Harris County's Motion for Summary Judgment on plaintiff's federal law claims and declining to exercise supplemental jurisdiction over plaintiff's state law claims, the claims that plaintiff has alleged under federal law are **DISMISSED with prejudice,** and the claims that plaintiff has alleged under state law are **DISMISSED without prejudice**.

Each party will be responsible for its own costs.

This is a **FINAL JUDGMENT**.

**SIGNED** at Houston, Texas, on this the 22nd day of June, 2011.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE